EbeemaN, J.,
delivered the opinion of the Court.
The complainant alleges that one John L. Dearmon, on the 30th of May, 1865, made a deed of trust, by which he conveyed to one A. M. Savage, a dwelling house and lot in the town of Smithville, together with some negro slaves, various other articles of personal property, and a tract of land, known as the “Round Bottom tract,” a tract of 227 acres in the same county, a tract containing 84 acres, together with several other town lots in said town. This deed of trust was made to secure a number of debts specified therein, amounting, in all, to between five and six thousand dollars, perhaps. Among these debts, are several owing to defendants, Morgan & Co., and Eakin & Co.
The deed of trust gives Dearmon, the maker of it, and debtor, twelve months to pay the debts in, from its date, and provides that if they are paid, then “the above obligation to be null and void, and the legal title to the property to be and revert to me,” that is, Dearmon. It *674 goes on then to provide, that in case of failure to pay the debts within the time, the trustee shall sell the property for cash, after advertising the same for a specified time. It then prescribes the order of appropriation of the money arising from the sale, from which it will be seen that the debt of Morgan & Co., of $639, and of Eakin & Co., of $1,067, together with a few other debts, are to be paid first, after the expenses of the trust; also, such balance ""of a debt due Morgan & Co., of $1,098, for the security of which certain collaterals had been given, as might remain due on account of the insolvency of some of the collaterals, which seems to be assumed as probable. In the conclusion of the deed, he says: “I reserve to myself the right to sell said property at any time, with the consent of the trustee, before said trust is .closed, by applying the proceeds as I direct my trustee to apply them.” He also reserves “the right to direct the trustee which species of property, real or personal, shall first be sold, until the' deed is closed.” He also reserves the right to retain possession of the property till the closing of the deed.
The' bill of Sewell, the complainant, claims that in, perhaps, August, 1860, he purchased of said Dearmon the dwelling house and lot mentioned in said deed of trust, the said Dearmon acting under the power reserved to him by the provisions of said deed, and that Dearmon informed him that there was no further incumbrance on said land, and that he took a deed, in pursuance of the title bond given him, on paying the purchase money, 12th of January, 1863, and that he had been in possession ever since. He also claims that the money paid for tins *675 house and lot was applied by Dearmon, properly, to the payment of debts under the trust; , said Dearmon, by consent of the creditors, having full control and disposition of the property conveyed. The trustee, Savage, it seems, had died early in the year 1857.
It seems from the answer of Morgan & Co. and Eakin' & Co., that in 1856 or 1857, the said Dearmon, in the language of the answer, “pressing his reserved rights, selected this town lot, and the 227 acre tract of land, to be sold to pay respondent’s debts, which sale was made by Savage, the trustee, under the direction of Dearmon; and that they, by their agent, bid their debts on the land and town lot, which they had to agree to before said Dearmon and the trustee would agree to sell.” The answer then states, that before the trustee made title under this sale he died, and Morgan & Co. and Eakin & Co. filed their bill to obtain a title under said purchase, and to have possession of the same decreed to them. The precise time when this bill was filed does not appear, but we infer from the answer that it was.in 1858.
"When the bill was filed, Dearmon' filed his cross bill, alleging, as the answer states, that the debts were paid, and the sale only intended as a mortgage, to secure these particular debts.
How this litigation progressed, or on what issues, does not precisely appear, as the bills and answer are not in the record. We see, however, that at the September Term, 1860, of the Court, a decree was made in the cause, in which it is declared, after reciting the fact of the conveyance of the property by the deed of trust, and the death of Savage, the trustee, that it appeared “that there is a *676 bouse and lot in the town of Smithville, and a tract of land near Smithville, and a negro woman and two children, which are conveyed in the trust deed, that are un-disposed of.” It was therefore ordered and decreed by the court, that the Clerk and Master should sell “said town lot, slaves and land, or enough to pay the debts.” In a previous part of the decree, it appears that the Clerk and Master had reported the entire indebtedness of Dear-mon to complainants in that bill as being $962.48, which report was confirmed. It was further ordered, that Dear-mon deliver over said slaves immediately to the Clerk and Master, and in case of refusal, that an attachment writ issue for the same.
At the March Term, 1861, there appears a decree, reciting the fact that there had been an appeal from the above decree to the Supreme Court; also stating the facts of the said decree as to recovery of the debts referred to, and that the Supreme Court had affirmed said decree, and the Clerk and Master of the Chancery Court had been ordered to execute it, by attaching and selling the land and negroes, together with the town lots mentioned in the deed of trust; not setting out or describing said land or town lots by any more specific description.
It appears from the decree that the Clerk had, in pursuance of the order of the Supreme Court, attached and taken into his possession the three negroes mentioned, “belonging to said Dearmon,” and had advertised, and was about to sell these negroes. By consent of the parties, through their counsel, it was ordered that the sale be stayed fo.r six months, upon Learmon giving securities in open court for the stay of the decree for six months, *677 and for the forthcoming of the negroes, and their delivery at the end of that time, to be sold by the Clerk and Master, in satisfaction of the decree, and, by agreement, the negroes were to remain in possession of Dearmon. It was further agreed by the sureties, Ilallum and Baker, that if the slaves are not delivered, execution shall issue against them jointly with Dearmon for the debt and costs, and if the property mentioned in the trust deed fails to pay off the decree, that execution may issue against them jointly with Dearmon for the remainder.
On the 16th day of October, the six months having expired on the third Monday in September, an execution was issued, the negroes not having been delivered, and was levied on the three negroes mentioned in said decree, by the Coroner, as appears by • his return, and attempted to be levied on one tract of laffld, said to contain 100 acres, and a town lot, known as Lot No. 9. This levy, so far as the land, and perhaps the town lot, is concerned, is clearly void, for want of identification of the property levied on.
On the facts above recited, however, the questions are raised which are to be decided.
It is insisted by Morgan & Co. and Eakin & Co., that the levy on the negro is void, because the legal title was conveyed to Savage, the trustee, and consequently did' not operate to extinguish the debt under the general rule of law, that the levy on personal property sufficient to pay the debt is a satisfaction. Admitting the principle assumed to be correct, we can not hold it applicable to the facts of this case, as it appeal’s in 'this record. So far as we can gather from the record, in the suit of Morgan & *678 Co. and Eakin & Co., and of Dearmon, in his cross bill against them, all proper parties were before the Court. We would infer this, in favor of the regularity of proceedings' before a court of general jurisdiction, nothing to the contrary appearing. We assume that as Savage, the trustee, was dead, another trustee was appointed in his stead, and that with all proper parties before the Court, the decree was made, ascertaining the debt due the defendants in this case, and ordering a sale of the negroes, the land and town lots; that the same parties were before the Court when, by consent, the execution of the decree from the Supreme Court was stayed, and additional security given and accepted by the parties, and the negroes agreed by all parties to be delivered to be sold in satisfaction of the debt, and if not delivered, that execution should issue. Aéter the failure to deliver, an execution -was properly issued, and properly levied on the property that had been decreed to be liable to the debt, and had been attached and advertised to be sold under the decree of the Court, that is, the negroes; and as the levy was made by complainants, on an execution issued in pursuance of a decree that directed the sale of these negroes for payment of their debt, we do not think they are in condition to say that it -was wrongfully levied. No one could dispute their right to have the negroes sold for their debt, under the decree; nor did any one interpose any objection to the sale which would have paid their debt. They failed to have said property sold, or, at any. rate, the Coroner failed to sell. We, therefore, hold, that, as the levy was properly made, and was upon sufficient property to satisfy their debts, they can not now proceed to *679 enforce said debts on other property, to which complainants have acquired a title in good faith, as far as we can see; for we may assume that the parties themselves have misled the complainants into its purchase, by the fact that they sought the satisfaction of their debts out of the negroes.
It is clear that the Coroner had levied the execution on personal property sufficient to satisfy the execution, and that this was a satisfaction of the debt: Evans v. Barnes, 2 Swan, 292.
So far as we can see, there was nothing to prevent a sale of the property except the neglect of his duty by the Coroner. Upon the levy he became liable to the parties plaintiffs in the execution for the debt, the same being extinguished by the levy, as against the original debtor. Morgan & Co. and Eakin & Co. must look to the Coroner, on his official bond, for their debt: 2 Swan, 293.
This view of the case renders it unnecessary to examine the other questions discussed, and it disposes of the whole case made by the pleadings.
The Chancellor having taken this view of the case, we affirm his decree, and direct that the defendants, Morgan & Co. and Eakin & Co., pay the costs of this court, as well as the court below.